NO. 07-03-0342-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MAY 18, 2004



______________________________




JOSEPH EMILIO SAUCEDA, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 9TH DISTRICT COURT OF MONTGOMERY COUNTY;



NO. 03-05-03403-CR; HONORABLE FRED EDWARDS, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

 ORDER OF ABATEMENT AND REMAND

 Appellant Joseph Emilio Sauceda has given notice of appeal from a conviction and
sentence in Cause No. 03-05-03403-CR in the 9th District Court of Montgomery County,
Texas (the trial court), for arson. The appellate court clerk received and filed the trial court
clerk's record on July 25, 2003, and received and filed the trial court reporter's record on
December 9, 2003. 

 This court has granted three extensions of the time for filing appellant's brief. The
brief was due on April 13, 2004, pursuant to the most recent extension of time granted for
filing of the brief. On April 16, 2004, the appellate clerk received and filed a fourth motion
to extend the time for filing appellant's brief. 

 Appellant's fourth motion for extension of time for filing his brief is based on the
allegation that potential material witnesses not called at trial are incarcerated in the TDC-Institutional Division, and are "believed to be housed in the Texas City and Edinburg
facilities. The great distance to these facilities has prohibited counsel from visiting these
witnesses." The same basis was given for two prior motions, although prior motions also
were based on the assertion that one State's exhibit was not attached to the reporter's
record. Counsel has not demonstrated or set out any effort made to visit the referenced
witnesses, or to prosecute appellant's appeal. 

 This appeal is abated and the cause is remanded to the trial court. Tex. R. App. P.
38.8(b)(2). Upon remand, the judge of the trial court is directed to immediately cause
notice to be given of and to conduct a hearing to determine: (1) whether appellant desires
to prosecute this appeal; (2) if appellant desires to prosecute this appeal, whether
appellant's present counsel should be replaced; and (3) what orders, if any, should be
entered to assure the filing of appropriate notices and documentation to dismiss appellant's
appeal if appellant does not desire to prosecute this appeal, or, if appellant desires to
prosecute this appeal, to assure that the appeal will be diligently pursued. If the trial court
determines that the present attorney for appellant should be replaced, the court should
cause the clerk of this court to be furnished the name, address, and State Bar of Texas
identification number of the newly-appointed or newly-retained attorney. 

 The trial court is directed to: (1) conduct any necessary hearings; (2) make and file
appropriate findings of fact, conclusions of law and recommendations, and cause them to
be included in a supplemental clerk's record; (3) cause the hearing proceedings to be
transcribed and included in a supplemental reporter's record; (4) have a record of the
proceedings made to the extent any of the proceedings are not included in the
supplemental clerk's record or the supplemental reporter's record; and (5) cause the
records of the proceedings to be sent to this court. Tex. R. App. P. 38.8(b)(3). In the
absence of a request for extension of time from the trial court, the supplemental clerk's
record, supplemental reporter's record, and any additional proceeding records, including
any orders, findings, conclusions and recommendations, are to be sent so as to be
received by the clerk of this court not later than June 15, 2004. 

 

 Per Curiam

Do not publish.



is not a fact in this case. 
Could be for more than two reasons why he may not
want to testify. It could be inconsistent evidence. Lack
of evidence. Lack of witnesses. Lack of credible
witnesses. Maybe -- 

 THE COURT: Counsel, Counsel, you can't get into it either.

 MR. COHN: Thank you. That's fine. Thank you, Judge.

 Remember when you were a child and your mother took
a cookie out of the cookie jar? I'm sorry, your mother
accused you of taking a cookie out of the cookie jar. 
My mother took several cookies out of a cookie jar but
so did I. In this particular case, your brother took the
cookie out of the cookie jar, not this brother, I have two
other brothers may have been them. In this case your
brother took a cookie out of the cookie jar. Your mother
said, put the cookies back, and you didn't do it; do you
remember mom -- saying mom I didn't do it. First thing
you want to do is defend yourself, anybody here say
that to your mother? Mom, I didn't do it. Folks, in this
case with Mr. Cox, he didn't do it. Why would he
testify? Why would he defend himself?

 THE COURT: Counsel, you can't get into that.

 MR. COHN: Okay. Your Honor, I'm just -- if I can, on the right not
to testify. 

 THE COURT: Well, that's -- I'm going to instruct them on that right. 
You cannot elaborate on that. 

 MR. COHN: Thank you, Judge. That's fine. Thank you. 
Remember, folks, State does the accusing make them
do the proving. The burden of proof is entirely on the
State, and you cannot consider for any purpose Mr. Cox
not testifying.

The jury charge stated:

 Our law provides that a defendant may testify in his own behalf
if he elects to do so. This, however, is a privilege accorded a
defendant, and in the event he elects not to testify, that fact cannot be
taken as a circumstance against him.

 In this case, the defendant has elected not to testify, and you
are instructed that you cannot and must not refer or allude to that fact
throughout your deliberations or take it into consideration for any
purpose whatsoever as a circumstance against him.

 

 The trial court did not limit counsel's voir dire in this area until counsel began
suggesting reasons appellant might not testify, posing open-ended questions to the panel
asking the members to speculate about reasons why appellant would not testify and
stating that appellant did not do what he was accused of. The reason appellant might not
testify would not be applicable to any issue in the case, because regardless of the reason
for appellant's failure to testify, the jury could not consider his failure to testify for any
purpose against him. The question finally actually posed by counsel was so broad and
vague that it was not a proper question. A voir dire question that is so vague or broad in
nature as to constitute a global fishing expedition is not proper and may be prevented by
the trial judge. Barajas, 93 S.W.3d at 39. 

 Furthermore, if the trial court limits a question due to its form, trial counsel must
determine the basis of the limitation and attempt to fashion a query which complies with
the perceived inadequacy. See Wright v. State, 28 S.W.3d 526, 534 (Tex.Crim.App.
2000). Although appellant is entitled to ask proper questions in a particular area of inquiry,
such entitlement does not extend to asking questions in any particular form. Without a
showing of diligence by counsel to follow through and attempt to fashion questions
inquiring into the area of inquiry which complied with the trial court's ruling, we cannot say
that the trial court improperly restricted voir dire on the topic. Id. Error is not preserved
for review as to proposed questions not presented to the trial court for a ruling. See id.; 
Caldwell v. State, 818 S.W.2d 790, 794 (Tex.Crim.App.1991). 

 The second area complained of by appellant under this issue is that the trial court
abused its discretion in restricting appellant's questioning of potential jurors as to
indications of fatigue or exhaustion as contrasted with indications of intoxication. The
record reveals the following exchange between one of appellant's defense attorneys and
venireperson Criswell:

 MR. COHN: If I could for a moment -- I'm not picking on you,
Mr. Criswell -- the indication of fatigue or
extreme exhaustion -- what would you look for
in somebody who might be extremely fatigued? 
What kind of things would you look for in
somebody who hasn't slept in -- I'm
exaggerating, in three or four days? 

 JUROR CRISWELL: Well, they would not be attentive. Eyes would
not be --

 MR. COHN: Bloodshot eyes maybe -- 

 JUROR CRISWELL: Bloodshot and maybe they would not be able to
focus.

 THE COURT: Sir, you can't have a seminar.

 MR. COHN: Thank you, Judge.

 THE COURT: Okay?

 MR. COHN: Thank you, Judge. Folks, I'll move on.

 Appellant's counsel asked a question and the venireperson was allowed to answer. 
Counsel did not present any questions which he was not allowed to ask. If counsel
refrains from asking a question, the trial judge is denied the opportunity to make a ruling. 
We are unable to review a ruling which was never made. The record presents nothing for
review. See Wright, 28 S.W.3d at 534; Caldwell, 818 S.W.2d at 794.

 Appellant also contends that the trial court abused its discretion by restricting
appellant's questioning of the venire as to the issue of the State's burden of proof. He
addresses the following exchange:

 MR. COHN: Anybody here seen anything, read anything,
heard anything about the accuracy or inaccuracy
of the breath test? Anybody? Mr. Biolsi, what
have you heard? 

 JUROR BIOLSI: I have heard that it can be wrong as all get out.

 MR. COHN: Thank you, sir. Mr. Layton.

 MR. ALEX: Judge, I'm going to object. We're getting into
the scientific mechanism of a breath test,
whether its a refusal or a test case, it's getting
into the evidence -- potential evidence of the
case. 

 MR. COHN: Your Honor, if I could be heard.

 THE COURT: Sure.

 MR. COHN: The Prosecutor made reference to the right to
take a breath test, the privilege to refuse it, and
the driver's license being suspended. I'm not
asking anything in specific, I'm just asking if
anybody heard anything.

 MR. ALEX: I don't object to if anybody heard anything,
Judge, I object to them telling what they know
about the inner workings or how the tests were
-- a yes or no answer, I have no objection with.

 THE COURT: Yes or no.

 MR. COHN: That helps and I appreciate it. Anybody else? 
Mr. Layton, you've heard some stuff on it?

 MR. LAYTON: Yes.

 MR. COHN: Mr. Woodall.

 JUROR WOODALL: Uh-huh.

 MR. COHN: Thank you, folks. Thank you very much. 
Anybody else?

 (No response.)

 MR. COHN: Thank you very much. Thank you.

 Assuming the subject matter of counsel's questions was proper, appellant's counsel
was not prohibited from inquiring into what the members of the venire knew about the
accuracy of breath tests. Counsel was allowed to ask Juror Biolsi what he had heard
regarding the accuracy of such tests, and the trial court allowed Biolsi to answer the
question. After the prosecutor objected, and before the court could rule on the objection,
appellant's counsel told the court that he was not asking anything specific, rather, he was
merely asking whether any members of the venire had heard anything regarding the
accuracy of breath tests. The trial judge's ruling limited the form of any further questioning
to a certain extent, but did not prohibit counsel from continuing his inquiry into whether any
member of the venire had heard anything. The record does not reflect any specific
questions which counsel posed and was refused the opportunity to ask as to what the
potential jurors had heard or otherwise knew about the subject matter, nor a request to ask
such questions at a bench conference or out of the hearing of the other venire members
in some other fashion. Counsel's failure to diligently attempt to fashion questions which
complied with the trial court's ruling or otherwise seek information from venire members
prevents us from concluding that the trial court improperly restricted voir dire on the topic. 
See Wright, 28 S.W.3d at 534. 

 Appellant next complains that his examination of the entire panel was restricted 
because the trial court restricted his questioning to "the back row of the venire" when no
such restriction was placed on the State. He references an exchange that occurred while
appellant's counsel was questioning Juror Jones:

 THE COURT: Which juror is this that your [sic] questioning?

 MR. COHN: Pardon me?

 THE COURT: Which juror are you talking to?

 MR. COHN: Ms. Jones.

 THE COURT: Where is Ms. Jones? She won't even be on the
jury vote, sir.

 MR. COHN: Thank you, Judge. May we approach?

 An unrecorded bench conference was then held. At the end of the bench
conference, jurors Johnson, Platt, and Jones were called to the bench and another bench
conference was held regarding their qualifications to serve on the jury. Appellant's
counsel asked several questions of Jones during the bench conference, and she was
excused by the trial court. 

 The trial judge never ruled that appellant's counsel could not question Jones, nor
did the judge prohibit appellant's counsel from asking any specific questions of her or of
any other member allegedly on the "back row." Appellant does not reference any objection
lodged to the trial court's statement as to Jones, nor any objection to any other action of
the trial court as to this complaint. Thus, appellant has not preserved error for review. 
See TRAP 33.1(a)(1); Wright, 28 S.W.3d at 534; Caldwell, 818 S.W.2d at 794. 

 Appellant next argues that the trial court abused its discretion in sua sponte
declaring a prospective juror qualified without allowing proper examination by appellant's
counsel when the prospective juror should have been excused under Article 35.16(a)(9)
of the Code of Criminal Procedure. See Tex. Crim. Proc. Code Ann. § 35.16(a)(9)
(Vernon 1989).

 During the State's voir dire, veniremember Johnson disclosed that her dad was a
police officer. During questioning by both the prosecutor and appellant's counsel, her
answers on the whole were equivocal as to whether she would consider testimony from the
police more credible because of their status as officers and her dad's position. Eventually,
the trial court addressed her and determined that she was qualified. In presenting his
issue, appellant quotes, in part, the following from the record: 

 THE COURT: Everybody -- ma'am, your Dad's been a police
officer for how long?

 JUROR JOHNSON: For ten years.

 THE COURT: Now, the last question we have, folks, the fact
that your father was a police officer and you
think highly of your father, I assume, would that
fact alone -- the fact that your deliberation -

 JUROR JOHNSON: Would not affect.

 THE COURT: Your father's a police officer, and a police officer
is going to testify; would that interfere with your
deliberation process?

 JUROR JOHNSON: No, I would hear what everybody have to say.

 THE COURT: You'd hear a police officer and you would give
him more credibility, or you'd believe a police
officer's job - -

 JUROR JOHNSON: I did not say I'd give him more credibility, but I
didn't explain that. That's not what I said. He
was going on that, that's what I said back there
-- about being fair -- that lady she felt -- 

 THE COURT: Well, the jurors did. The fact is that you're going
to be fair with a police officer?

 JUROR JOHNSON: Yes.

 THE COURT: She is qualified.

 MR. COHN: Your honor, first of all I object. . . . (sotto
voice)[sic] I also object to the standard - in this
community that the - this community in this
county that voir dire is conducted when
objections are made after the completion of voir
dire. . . .


 In urging his issue, appellant references Texas Constitution Article 1, § 10 and
Code of Criminal Procedure article 35.16(a)(9) in asserting his right to have Johnson
removed for cause because she had a bias or prejudice. He then asserts that he
preserved error because he made known to the trial court the topic on which he sought to
further question Johnson, and that he was harmed because the trial court prevented him
from asking proper questions.

 The record does not substantiate appellant's claim. The closest appellant came to
objecting to the trial court's action on Johnson was "Your honor, first of all, I object. . .,"
after which he discussed local procedures for presenting challenges to potential jurors. 
Such an objection is a general objection, at best, and is not specific enough to advise the
trial court of his complaint, and to preserve error. See TRAP 33.1(a)(1); Smith v. State,
683 S.W.2d 393, 403-04 (Tex.Crim.App. 1984). 

 Moreover, a trial court's ruling on a challenge to a member of the jury venire is
reviewed for abuse of discretion. See Adanandus v. State, 866 S.W.2d 210, 222
(Tex.Crim.App. 1993). The ruling is reviewed in light of the venireperson's voir dire as a
whole. See Garcia v. State, 887 S.W.2d 846, 854 (Tex.Crim.App. 1994). If the
venireperson vacillates or equivocates on the matter in question, the reviewing court
generally defers to the trial court's decision because the trial court had the opportunity to
see and hear the person. Id. 

 Viewing Johnson's voir dire as a whole, it is clear that she was at first equivocal in
response to some questions. Thus, we defer to the trial court's decision, and conclude
that the trial court did not abuse its discretion in determining that she was qualified. Id. 

 Finally, appellant makes no claim that the trial court's action required him to use a
peremptory strike on Johnson, that Johnson was on his jury, or that the ruling somehow
resulted in an objectionable juror sitting on his jury. (3) We conclude that the trial court's
action was not error, appellant has not preserved error for review, and that in any event
the action was harmless. See Jacobs v. State, 787 S.W.2d 397, 405 (Tex.Crim.App.
1990). 

 Appellant next contends that the trial court abused its discretion by limiting trial
counsel's questioning of individual jurors on the subject of the State's burden of proof. In
support of this argument, appellant refers to the following exchange:

 MR. COHN: The burden of proof is entirely on the State. The State
does the accusing make them do the proving. I know
I've said that over and over.

 Anybody who doesn't agree with that? Anybody? 
Anybody have a problem with that? Mr. Jackson, is that
the way you'd want it if you were charged?

 MR. ALEX: Judge, I'm sorry. I'm going to have to object at this
point. Counsel is arguing this case on voir dire. He's
asked that question at least five times now. And I think
at this point we are no longer talking about the law or
getting any information, we're arguing our case at this
point.

 THE COURT: What was the question?

 MR. COHN: Your Honor, I simply asked Mr. Jackson if he heard
some evidence of alcohol, but he was not convinced
beyond a reasonable doubt, would he find -- how
would he find.

 THE COURT: Well, I'll sustain that objection to this. It's repetitive. 
You've asked that question in one form or another,
Counsel.

 MR. COHN: That's fine. Thank you, Judge.

 Appellant urges that a defendant's counsel has the right to ask specific questions
of individual veniremembers, see Plair v. State, 279 S.W. 267, 268 (Tex.Crim.App. 1925),
even while acknowledging the rule that a trial court does not abuse its discretion in
refusing to allow defense counsel to ask duplicitous, repetitive or unnecessary questions
regarding the burden of proof. Penry v. State, 903 S.W.2d 715, 739 (Tex.Crim.App. 1995). 


 In this instance, the record quoted by appellant shows that: (1) appellant's counsel
stated that "I've said that over and over," (2) the prosecutor objected in part because
counsel had asked the question "at least five times," (3) the court agreed with both counsel
that the question had been asked before in one form or another, and (4) counsel did not
object that although the question was repetitive, counsel had not sought the particular
views of Jackson on the matter. Assuming, arguendo, that the trial court's ruling would
have been error because appellant was directing his inquiry to an individual member of the
venire, appellant was required to object and state the grounds for the ruling sought from
the trial court with sufficient specificity to make the trial court aware of the complaint,
unless the specific grounds were apparent from the context of the objection. TRAP
33.1(a)(1)(A). Appellant did not do so. The trial court did not abuse its discretion in
disallowing the question on the basis that it was repetitive, in the absence of an objection
by appellant on some other grounds. Moreover, appellant did not use a peremptory
challenge on veniremember Jackson and Jackson was not on the jury. The error, if any,
was harmless. (4) 

 Finally, as part of issue one, appellant contends that the trial court abused its
discretion in refusing to allow appellant's counsel to make a bill of review regarding an
allegedly improper statement made by a venireperson in the presence of the bailiff. 
Appellant has not included any argument or authority in his brief in support of his claim. 
He has presented nothing for this Court to review. See Lagrone v. State, 942 S.W.2d 602,
614 (Tex.Crim.App. 1997); Rodriguez v. State, 955 S.W.2d 171, 176 (Tex.App.--Amarillo
1997, no pet.).

 Having found no merit to any of the subparts of issue one, we overrule the issue.

ISSUE 2: INEFFECTIVE ASSISTANCE OF COUNSEL

 Appellant's second issue asserts that he received ineffective assistance of counsel
in violation of his rights under the Sixth Amendment to the United States Constitution and
under Article I, § 10 of the Texas Constitution. Appellant, however, does not separately
brief his Texas constitutional claim, nor argue that the Texas Constitution provides more
protection to him in this matter than does the United States Constitution. Under such
circumstances, we need not and will not address his state constitution claim separately. 
See Muniz, 851 S.W.2d at 251; Johnson v. State, 853 S.W.2d 527, 533 (Tex.Crim.App.
1992). 

 We are obligated to follow United States Supreme Court precedent on matters of
federal constitutional law. Hernandez v. State, 988 S.W.2d 770, 771 (Tex.Crim.App. 1999). 
When confronted with an ineffective assistance of counsel claim, we apply the
two-pronged analysis set forth by the United States Supreme Court in Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v.
State, 726 S.W.2d 56-57 (Tex.Crim.App.1986) (adopting Strickland as applicable standard
under Texas Constitution).

 Under the first prong of the Strickland test, an appellant must show that counsel's
performance was "deficient." Strickland, 466 U.S. at 687. "This requires showing that
counsel made errors so serious that counsel was not functioning as the 'counsel'
guaranteed the defendant by the Sixth Amendment." Id. To be successful in this regard,
an appellant "must show that counsel's representation fell below an objective standard of
reasonableness." Id. at 688. Appellant must prove both prongs of Strickland by a
preponderance of the evidence in order to prevail. McFarland v. State, 845 S.W.2d 824,
842-43 (Tex.Crim.App. 1992). 

 Under the Strickland test, the defendant bears the burden of proving ineffective
assistance. In addition, when reviewing a claim of ineffective assistance, a court must
indulge a strong presumption that counsel's conduct falls within the wide range of
reasonable professional assistance; that is, the defendant must overcome the presumption
that, under the circumstances, the challenged action "might be considered sound trial
strategy." Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). The defendant
asserting ineffective assistance must present a record with evidence of the reason or
reasons that the alleged ineffective assistance actions or omissions were not trial strategy. 
Failure to make the required showing of either deficient performance or sufficient prejudice
defeats the ineffectiveness claim. Id. 

 Without any proof in the record of trial counsel's reasons for his actions of which
complaint is made, see Bone v. State, 77 S.W.3d 828, 836-37 (Tex.Crim.App. 2002),
appellant asserts that he was denied effective assistance of counsel in that appellant's trial
counsel failed to 1) object to and preserve error regarding certain questions asked by the
prosecutor on voir dire, during the State's case-in-chief, and in final argument; 2)
challenge a juror for cause; and 3) object to certain leading questions and statements
made by the prosecutor during presentation of the State's case-in-chief.

 We first address the allegations of ineffectiveness for counsel's failure to object to
questions, presentation of evidence, and argument by the prosecutor. As to such
allegations, to successfully present an argument that counsel was ineffective because of
a failure to object, appellant must show that the trial court would have committed error in
overruling such objection. See Vaughn v. State, 931 S.W.2d 564, 566 (Tex.Crim.App.
1996). Appellant has not done so. Appellant cites general law as to ineffective assistance
of counsel, then sets out several pages of references to the record and complaints about
what the prosecutor said or did. He does not cite any authority to support his burden of
showing that the trial court would have sustained an objection to the questions, manner
of presentation of evidence, or arguments made by the prosecutor. 

 The same presentation is made in regard to appellant's allegation of ineffectiveness
for failing to challenge juror Johnson for cause: argument is made without citation to
authority that had such a challenge been made, it would have been sustained. Thus,
nothing is presented for review as to the allegation. Id. 

 Appellant's second issue is overruled. 

ISSUE 3: DENIAL OF DUE PROCESS

 By his third issue, appellant alleges generally that the total effect of the errors
asserted in his prior issues resulted in denial of his right to due process under the 14th
Amendment to the United States Constitution and his right to due course of law under
Article I, § 19 of the Texas Constitution. He further posits that under such a denial as
appellant has suffered, the issue of harm is moot, and that to require a harm analysis
would be to abridge his constitutional rights of due process and due course of law. In
support of his issue he cites no authority either as to the assertion that his rights were
violated, or to the assertion that no harm analysis can be required. 

 Appellants may make arguments for which there is no authority directly on point. 
However, in making such arguments, appellants must ground their contentions in
analogous case law or advance some explanation for the failure to cite authority and
provide a relevant jurisprudential framework for evaluating the claim. See Tong v. State,
25 S.W.3d 707, 710 (Tex.Crim.App. 2000). Reference only to the Due Process Clause of
the Fourteenth Amendment to the United States Constitution and to Article I, § 19 of the
Texas Constitution is insufficient citation of authority to consider an issue adequately
briefed. Yates v. State, 941 S.W.2d 357, 363 (Tex.App.--Waco 1997, pet. ref'd). The body
of law surrounding these two provisions is great enough that more direct authority is
required when asserting violations of rights under either such provision. Id. 

 The issue is inadequately briefed. See TRAP 38.1(h); Tong, 25 S.W.3d at 710. 
See also, Rocha v. State, 16 S.W.3d 1, 20 (Tex.Crim.App. 2000) (argument that fails to
cite supporting authority presents nothing for review). Appellant's third issue is overruled. 

CONCLUSION

 Appellant's issues having been overruled, we affirm the judgment of the trial court. 



 Phil Johnson

 Chief Justice



Do not publish. 

 

1. Appellant cites both the 6th Amendment to the United States Constitution and
Article I, § 10 of the Texas Constitution in support of his issue. However, appellant has
not separately briefed his Texas constitutional argument, nor has he argued that the Texas
Constitution provides more protection to him in this matter than does the U.S. Constitution,
thus the Court need not address his Texas constitutional claim separately. See Muniz v.
State, 851 S.W.2d 238, 251 (Tex.Crim.App. 1993). 
2. Further references to a rule of appellate procedure shall be by reference to "TRAP
____."
3. Nor could he. Johnson was not on the jury and appellant did not exercise a
peremptory challenge on her. 
4. Because of our disposition of appellant's complaint, we need not consider whether
the question as phrased by counsel to the court after the State's objection was an improper
commitment question. See Standefer v. State, 59 S.W.3d 177, 179-80 (Tex.Crim.App.
2001).